1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   NORMA ESQUIVEL,                    )   Case No. 08-cv-01381-JLT
                                        )
12              Plaintiff,              )   DECISION   AND   ORDER   DENYING
                                        )   P L A I N T I F F ' S   A P P E A L   F R O M
13        vs.                           )   ADMINISTRATIVE DECISION
                                        )
14                                      )   ORDER  DIRECTING  CLERK  TO  ENTER
     MICHAEL J. ASTRUE, Commissioner of )   JUDGMENT IN FAVOR OF DEFENDANT,
15   Social Security,                   )   MICHAEL J. ASTRUE, COMMISSIONER OF
                                        )   SOCIAL   SECURITY,   AND   AGAINST
16              Defendant.              )   PLAINTIFF, NORMA ESQUIVEL
     _____)
17

18        Plaintiff Norma Esquivel[1] seeks judicial review of the administrative decision of the

19   Commissioner of Social Security ("Commissioner") denying her claim for disability insurance

20   benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.  On

21   September 15, 2008, Plaintiff filed her complaint initiating this review in the United States District

22   Court for the Eastern District of California.  (Doc. 1)

23        Plaintiff filed her opening brief on June 9, 2009.[2]  (Doc. 17)  The Commissioner filed his

24

25        [1]Curiously, Plaintiff amended her application for benefits to report that she was divorced and
26   used the name Norma Meza Paez. AR 86.  However, she testified that her name was Norma Meza
     Peza. AR 338. She filed her Complaint using the name Norma Esquivel. (Doc 1)

27        [2] Plaintiff refers to her opening brief as a motion for summary judgment. (Doc. 17) Although
28   briefs filed in Social Security cases were deemed summary judgment motions previously, for several

                                          1

1    opposition brief on August 10, 2009. (Doc. 21)  Plaintiff filed her reply on August 11, 2009. (Doc

2    22)

3                        **FACTS AND PRIOR PROCEEDINGS**[3]

4         On October 12, 2005, Plaintiff filed an application for disability insurance benefits under

5    Title II and supplemental security income under Title XVI of the Social Security Act ("Act").  AR

6    10, 81-85, 326-334.  After a hearing held on December 18, 2007, the ALJ found that Plaintiff was

7    not disabled within the meaning of the Act.  AR 18.  The Appeals Council denied review on July 18,

8    2008.  AR 2.

9         Medical Record

10        On December 27, 2005, Plaintiff completed a report for Dr. Kenneth Hsu in which she noted

11   that she had no difficulty with any of the living skills areas outlined, including dressing and

12   grooming, arising from bed or from a straight chair, feeding herself and walking and climbing stairs.

13   AR 155. She reported that she did not need any assistive aids or devices and did not need help from

14   another person to do these activities. Id.

15        On this same day, Dr. Hsu performed a rheumatologic evaluation of Plaintiff. AR 158.  Dr.

16   Hsu noted that the joints in Plaintiff's hands were "relatively puffy." Id.  Dr. Hsu opined that

17   Plaintiff's condition was "Compatible with fibromyalgia" but that he wished to "rule out

18   seronegative arthritis.  Id. He intended to repeat testing and to obtain x-rays of Plaintiff's hands.  Id.

19   The x-rays revealed that her bones and joints were normal.  AR 175, 225.

20        On July 20, 2006, Plaintiff presented herself to the emergency room at San Joaquin Hospital

21   complaining of a headache lasting two days.  AR 247.  She reported that she had suffered similar

22   headaches in the past related to her hypertension.  AR 249.  At the time, her blood pressure reading

23   was 162/96.  Id.  The doctor diagnosed her as suffering from a "Headache, likely tension type" after

24   reviewing her CT scan taken (AR 247) which verified no abnormality of her brain.   AR 244.  The

25   _____

26   years this Court has termed the documents as "opening briefs," "responses" or "oppositions" and
     "reply briefs."  This order continues the more recent trend.

27
         [3] References to the Administrative Record will be designated as "AR," followed by the
28   appropriate page number.

                                    2

1  results of this CT scan was confirmed on October 2, 2006, by a MRI. AR 217.  On July 27, 2006,

2  Plaintiff underwent a stress test with Dr. Maria Garcia which revealed an "Overall normal stress

3  myocardial perfusion study."AR 262-263.

4      X-rays of Plaintiff's hands, taken on August 24, 2006, showed changes that were consistent

5  with rheumatoid arthritis.  AR 180-181.  On March 27, 2007, x-rays of Plaintiff's hands revealed

6  minor bony changes consistent with rheumatoid arthritis. AR 170, 176.  X-rays of her right knee

7  showed probable joint effusion but no "specific bone or joint abnormality."  AR 178.

8      X-rays taken on June 7, 2007, showed no changes to Plaintiff's left hand from the exams

9  taken in March 2007.  AR 166.  Her right hand showed minor changes of her ring finger.  AR 167.

10  On this same date, x-rays of Plaintiff's cervical spine showed degenerative changes at the C6-7, and

11  to a lesser extent, at the C5-6 levels.  AR 168.  This was consistent with an earlier x-ray taken on

12  January 27, 2004.  AR 240.  X-rays of Plaintiff's right shoulder revealed no abnormality.  AR 169.

13  On July 9, 2007, Dr. Hsu reported that Plaintiff had clinical symptoms that were "compatible

14  with seronegative or psoriatic arthritis.  AR 144.  On September 11, 2007, x-rays of Plaintiff's hands

15  indicated findings that were consistent with rheumatoid arthritis.  AR 162-163.

16      Medical Evaluations

17      Dr. Emanual Dozier completed a comprehensive internal medicine evaluation of Plaintiff on

18  March 27, 2006. AR 289-292.  Dr. Dozier found Plaintiff to be alert and oriented.  AR 290. He

19  observed her to walk down a hall with a normal gait while showing no sign of pain, ataxia or

20  shortness of breath. Id. She sat through her interview with discomfort and was able to get herself on

21  and off of the examination table.  Id.  After examining Plaintiff, Dr. Dozier opined that she "would

22  have no postural or manipulation restrictions."  AR 292.  He concluded that she had no special

23  environmental restrictions and could lift and carry 50 pounds occasionally and 25 pounds frequently.

24  Id.  Finally, Dr. Dozier opined that Plaintiff could stand, walk and sit for six hours.  Id.

25      On April 6, 2006, Dr. Greg Hirokawa performed a psychiatric evaluation of Plaintiff.  AR

26  283-287.  She reported to him that the longest she held a job was five years but that she had worked

27  at various jobs as a packer for 20 years.  AR 284. She had never been fired and never had problems

28  at work.  Id.  She got along well with coworkers.  Id.  Dr. Hirokawa determined that she had

3

1   adequate conversational concentration, her intellectual functioning was average and she was able to

2   perform simple three-step commands.  AR 285.  However, Dr. Hirokawa believed that Plaintiff's

3   cognitive ability was underestimated in his Mental Status Examination due to her limited education

4   and her cultural background, .  AR 287.

5        Plaintiff reported to Dr. Hirokawa that she is able to a "little bit of everything" around the

6   house "but on a slow basis."  AR 286.  Typically, she got up in the morning and prepared lunch for

7   her boyfriend.  Id.  Then she then took her children to school.  Id.  She watched TV and cared for her

8   child. Id. She denied doing anything for fun and denied having many close friends.  Id.

9        Plaintiff's attitude was pleasant during the examination and she demonstrated a "good sense

10  of humor." AR 285.  She had good eye contact, was cooperative and her facial expressions were

11  appropriate.  Id.  Nevertheless, Dr. Hirokawa determined that her mood appeared depressed and her

12  affect was restricted. AR 285. Plaintiff reported that she had never received mental health treatment.

13  AR 284.

14       Dr. Hirokawa opined that Plaintiff suffered from major depression but that it was "in the mild

15  range."  AR 286.  He believed that there was a fair likelihood that Plaintiff's mental condition would

16  improve within 12 months and that her symptoms of depression were related primarily to her

17  medical condition.  AR 286-287.  Dr. Hirokawa concluded that Plaintiff's abilities were "fair"

18  regarding her ability to remember locations and work-like procedures, to understand, remember and

19  carry out very short and simple instructions, to understand and remember detailed instructions, to

20  maintain attention and concentration for extended periods, to accept instructions from a supervisor

21  and respond appropriately to criticism, to perform activities within a schedule, maintain regular

22  attendance and be punctual, to sustain an ordinary routine without special supervision, to complete a

23  normal workday and workweek without interruptions from psychologically based symptoms and to

24  perform at a consistent pace, to interact with coworkers and to deal with the various changes in the

25  work setting. AR 287.  Finally Dr. Hirokawa concluded that there was minimal likelihood that

26  Plaintiff would emotionally deteriorate in a work environment.  Id.

27       On May 27, 2006, Dr. Fonte performed a "Physical Residual Functional Capacity

28  Assessment" of Plaintiff.  AR 272-279.  Dr. Fonte determined that she was able to lift and carry 50

pounds occasionally and 25 pounds frequently.  AR 273.  She could stand or walk for six hours in an eight-hour workday.  Id.  She had an unlimited ability to push or pull items.  Id.  She had no limitation in climbing, balancing, stooping, kneeling, crouching or crawling.  AR. 274.  She could reach in all directions and perform gross and fine manipulations.  AR 275.  She had no impairment in feeling and no visual or auditory impairments.  AR 275-276.  Dr. Fonte recommended that Plaintiff avoid concentrated exposure to "hazards, machinery, heights, etc." but she had no other environmental limitations.  AR 276.

On June 13, 2006, psychiatrist Dr. Marina Vea performed a functional capacity assessment on Plaintiff.  AR 268-270.  Dr. Vea determined that Plaintiff was "Not Significantly Limited" in most areas.  Id.  She had the ability to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal work day and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, set realistic goals or make plans independently of others.  Id.  She was moderately limited only in her abilities to understand and remember detailed instructions and to carry them out.  Id.

Hearing Testimony

On December 18, 2007, Plaintiff testified before the ALJ.  She testified that she had been advised about her right to be represented by an attorney or other qualified representative but she chose to proceed without this assistance.  AR 340.

1   Plaintiff testified that her last job was as a tile packer and that she was required to lift "Ten

2   boxes for 40 pounds." AR 346.  Plaintiff reported that October 1, 2004 was the date that her pain

3   started and that this also was the last day that she worked.  AR 345-355.

4   Plaintiff reported that she lived with her boyfriend and two children who, at the time, were

5   age 17 and 5.  AR 346-347.  She drove, albeit on an expired license, several times per day to take her

6   son to school and to pick up the children after school.  AR 347-349.  Her son attended kindergarten

7   half days and spent the rest of the day in her care.  AR 347.  He was able to dress, feed and bathe

8   himself.  AR 349.

9   Plaintiff could dress herself, bathe herself and perform her own grooming activities.  AR 349-

10  350.  She prepared meals one time per day and generally washed the dishes one time per day.  AR

11  350-352.  She took out the trash once per day and changed the linens on the bed every other week.

12  AR 352.  She did laundry once per week and shopped for groceries every other week.  AR 352-353.

13  She went out to eat about one time per week.  AR 353.  She did not sweep, vacuum or mop, but she

14  dusted her furniture about one time per month.  AR 354-355.  She watched TV about three hours per

15  day.  AR 355-356.

16  Plaintiff testified that she could stand for about one hour and could sit for two hours straight.

17  AR 357-358.  She could walk about one block.  AR 358.  She estimated that she spent six hours out

18  of eight lying down due to pain or fatigue.  Id.  Plaintiff estimated that she could concentrate for

19  about one hour.  AR 359.

20  Although Plaintiff did not see a psychiatrist or psychologist, she saw her family doctor every

21  other month.  AR 356-357.  She testified that she had diabetes and dizziness but took medication for

22  these conditions.  AR 359.

23  Vocational expert ("VE"), Cheryl Chandler testified at the hearing also.  She had a Masters

24  Degree in rehabilitation counseling with an emphasis in vocational evaluation and had worked in the

25  fields of rehabilitation counseling/evaluating and vocational consulting since 1983. AR 39.  Chandler

26  testified that the job of packer was considered to be "medium exertional level" and "unskilled work."

27  AR 362.  Based upon the limitations expressed by Plaintiffs' doctors, Chandler testified that Plaintiff

28  could do her past relevant work and could work at other jobs in the national and state economy. AR

6

364-367.  On the other hand, based upon the abilities as set forth by Plaintiff in her testimony,
Chandler testified that Plaintiff could not perform her past relevant work nor could she perform other
work.  AR 3667-368.

ALJ Findings

The Administrative Law Judge ("ALJ") evaluated Plaintiff pursuant to the customary five-step sequential evaluation.  In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since her claimed date of onset (October 1, 2004).  AR 12. Second, the ALJ found that Plaintiff had severe impairments consisting of degenerative osteoarthritis by history with mechanical low back pain, possible fibromyalgia, a history of rheumatoid arthritis and major depressive disorder.  Id.  In the third step of his evaluation, the ALJ determined that these impairments, or a combination of these impairments, did not meet or medically equal that required under Agency guidelines for presumed disability.  AR 13.

In the fourth step of his analysis, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary through medium unskilled work" as defined by 20 C.F.R. § 404.1567, based upon her ability to lift and carry 50 pounds occasionally and 25 pounds frequently, stand, walk and sit for 6 hours in an 8 hour period, understand, remember and carry out short, simple instructions and detailed instructions, maintain attention and concentration for extended periods, interact and respond appropriately to coworkers, supervisors and the public, perform activities within a schedule, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace and to have only a minimal risk of emotional deterioration in the workplace.  AR 14-17.  Based on this RFC and citing the opinion of the VE at the hearing, in the fifth step of his analysis, the ALJ concluded that Plaintiff was not precluded from performing her past relevant work as a packer.  Id. at 17.  Alternatively, the ALJ concluded that Plaintiff could perform other work in the national economy, from sedentary through medium unskilled work.  Id.  Finally, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2004 through the date of the decision.  AR 17-18.  Based upon this analysis, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is more than a mere scintilla but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S.Ct. at 1426-27.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

**REVIEW**

To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

1   The Act also provides that a claimant shall be determined to be under a disability only if his

2   impairments are of such severity that he "is not only unable to do his previous work but cannot,

3   considering his age, education, and work experience, engage in any other substantial gainful work

4   which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

5       In an effort to achieve uniformity of decisions, the Commissioner has established a five-step

6   sequential evaluation process for determining whether a person is disabled under Title XVI of the

7   Act. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. 20

8   C.F.R. § 416.920(a)(4)(i), (b). If she is not, step two determines whether claimant has a medical

9   impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii), (c). The

10   third step compares claimant's impairment with a number of listed impairments acknowledged by

11   the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§

12   416.920(a)(4)(iii), (d). The fourth step determines whether the impairment prevents the claimant

13   from doing work performed in the past. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b). If the

14   claimant cannot perform this work, the fifth and final step in the process determines whether she is

15   able to perform other work in the national economy in view of her age, education and work

16   experience. 20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c). See Bowen v. Yuckert,

17   482 U.S. 137 (1987).

18       The initial burden of proof rests upon a claimant to establish that she "is entitled to the

19   benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations

20   omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that

21   "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that

22   an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of

23   burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098,

24   n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a

25   physical or mental impairment prevents her from engaging in her previous occupation. The burden

26   then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful

27   activity and (2) that a "significant number of jobs exist in the national economy" which claimant can

28   perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff challenges the ALJ's determination at Steps 4 and 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on her RFC.  Plaintiff raises only one claim of error.[4]  She asserts that the failure of the ALJ to define the word "fair" as it was used by Dr. Hirokawa in his report when posing hypothetical situations to the VE, rendered her opinions meaningless.  For the reasons set forth below, the Court disagrees.

**DISCUSSION**

Plaintiff argues that the ALJ erred because he failed to properly develop the record as to the meaning of the word "fair."  She asserts that "fair" is a term of art whose meaning varies within the Social Security field.  She asserts that it means the status between "poor and good" and also that it means "seriously limited, but not precluded."  She then asserts also that "seriously limited, but not precluded" means the same as "marked" impairment.   Thus, she asserts that because "fair" has different meanings and the ALJ failure to define it for the VE has resulted in a determination that is not supported by substantial evidence.

Plaintiff cites to <u>Cruse v. United States Department of Health & Human Services</u>, 49 F.3d 614, 618[5] (10th Cir. 1995) to demonstrate the ambiguity of the word "fair." <u>Cruse</u> defined the word as "seriously limited, but not precluded, whose meaning was equivalent to the court as the word "marked."  In <u>Cruse</u>, the court observed,

> Moreover, the [mental assessment] forms' definition of "fair" is misleading. Though describing a functional ability as "fair" would imply no disabling impairment, "fair" is defined to mean: "Ability to function in this area is seriously limited but not precluded." *Id.* We conclude that "seriously limited but not precluded" is essentially the same as the listing requirements' definition of the term "marked:"

<u>Id.</u>  However, <u>Cruse's</u> definition, equating "seriously limited but not precluded" to a "marked"

---

[4] The ALJ determined that Plaintiff's symptom testimony was not credible but the Court notes that he gave a detailed explanation for this determination.  AR 16-17.  Plaintiff does not contest this finding in his brief and, thus, the Court has not addressed this issue on appeal.

[5] Plaintiff relies upon <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir. 2001).  In doing so, she ignores that this case was withdrawn by the Court and, therefore, is not of precedential value. <u>Edlund v. Massanari</u>, 2001 U.S. App. LEXIS 17960 (9th Cir. Wash. Aug. 9, 2001).  Ironically, however, the Court concluded that "'Fair' is defined as follows: 'Ability to function in this area is seriously limited, but not precluded.'"

1  limitation has been widely criticized.  In <u>Colvin v. Barnhart</u>, 475 F.3d 727, 731 (6th Cir. 2007), the

2  court noted that a "marked impairment" meant something that could not be done and, in so doing

3  held, "The plain meaning of 'seriously limited but not precluded' is that one is not precluded from

4  performing in that area. It defies logic to assert that a finding of 'not precluded' actually means that

5  one is precluded."  Likewise in <u>Cantrell v. Apfel</u>, 231 F.3d 1104, 1107-1108 (8th Cir. 2000), the

6  court rejected the <u>Cruse</u> definition.  <u>Cantrell</u> held,

> The word "fair" is both a measure of ability and disability. It is on the balance
> between poor ability to function and greater ability to function. A physician's use of
> the term "fair" does not, on its own, declare that the claimant cannot return to past
> work. Rather, the term "fair" requires a review of the entire record in order to judge
> whether the balance tips toward functional ability or toward disability. Here, the ALJ
> could determine that the functional ability Cantrell had, considering his mental
> impairments and his previous menial work experience, established that he could
> return to the limited type of work he had been performing.

12  <u>Id.</u>

13      In the current case, the ALJ did not merely accept Dr. Hirokawa's opinions regarding

14  Plaintiff's "fair" abilities as the only evidence to support his determination.  Instead, the ALJ

15  considered the evidence of Drs. Dozier, Fonte and Vea and the other evidence in the record.

16      For example, Dr. Dozier determined that Plaintiff could lift and carry 50 pounds occasionally

17  and 25 pounds frequently.  Dr. Dozier opined also that Plaintiff could stand, walk or sit six hours in

18  an eight-hour work day.  AR 289-292.  She did not have postural or manipulation restrictions or

19  environmental restrictions.  AR 292.  Dr. Dozier observed Plaintiff to walk without pain, ataxia or

20  shortness of breath, to sit throughout the interview without signs of discomfort, to place herself onto

21  and remove herself off of the examination table without assistance.  AR 290.  These findings were

22  consistent with Dr. Fonte's observations.  AR 272-279.   The observations of Drs. Dozier and Fonte

23  are consistent also with Plaintiff's report in December 2005, that she had no difficulty in the areas of

24  dressing and grooming, arising, eating or walking.  AR 155. It is consistent also with Plaintiff's

25  report to Dr. Hirokawa that she is able to do a "little bit of everything" around her home including

26  housekeeping, food preparation and caring for her children. AR 286.  It was consistent also with her

27  testimony given at the hearing.  AR 347-355.

28      On the other hand, Dr. Hirokawa determined that Plaintiff's depression was "in the mild

range" and that there was only a minimal likelihood that she would deteriorate emotionally in a work setting.  AR 285-287.  Moreover, Dr. Hirokawa believed that Plaintiff had a fair likelihood of improving over the next 12 months.  AR 286.  These findings mirrored Dr. Vea's determinations that she was "Not Significantly Limited" in the areas of Understanding and Memory Sustained Concentration and Persistence, Social Interaction and Adaptation, except for her ability to understand and remember detailed instructions and carry them out which were areas in which she was moderately limited.  AR 268-269.  Taken together, the ALJ's determination that Plaintiff did not suffer from a severe mental impairment is supported by substantial evidence. 20 CFR 404.1521.

Likewise, the Court sees no error in how the VE reached her conclusion that Plaintiff could perform the duties of packer or other jobs in the economy, nor in the ALJ relying upon these opinions.[6] The VE based her conclusions on all of the medical assessments, given that they were set forth in the hypotheticals posed to her (AR 17, 364-368) and considered that Plaintiff's past work which was unskilled and required medium level exertion.  AR 362.

When evaluating the totality of the record, it appears that the ALJ's determination at Steps 4 and 5 of the sequential evaluation process, where he determined that Plaintiff had the RFC to perform "sedentary through medium unskilled work" and in the fifth step of his analysis, that Plaintiff was not precluded from performing her past relevant work or other work in the economy was supported by substantial evidence.

## **CONCLUSION**

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue,

---

[6]The Court notes that the ALJ was not required to use the services of a VE.  Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996).

12

1    Commissioner of Social Security, and against Plaintiff Norma Esquivel.

2

3    IT IS SO ORDERED.

4    Dated:   **January 26, 2010**                                    **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28